UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA MAE HENSON,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:18-cv-85-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. ECF Nos. 13 & 16. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I. BACKGROUND

Plaintiff filed applications for a period of disability, DIB, and SSI, alleging that she had been disabled since October 24, 2011. Administrative Record ("AR") 229-49. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 139-44, 147-52. A hearing was subsequently held before administrative law judge ("ALJ") Ruxana Meyer. *Id.* at 35-78.

1

On June 23, 2017, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1] *Id*. at 16-29. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

   * * *

2. The claimant has not engaged in substantial gainful activity since October 24, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3. The claimant has the following severe impairment: disorder of the bilateral knees; degenerative disc disease of the lumbar, thoracic and cervical; obesity; generalized anxiety disorder, bipolar I disorder (20 CFR 404.1520(c) and 416.920(c)).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

* * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant can lift and/or carry fifty pounds occasionally, lift twenty pounds frequently; stand and/or walk for six hours in an eight hour workday and sit for six hours in an eight-hour workday. The claimant can occasionally stoop, kneel, crawl, crouch and climb ramps, stairs, ladders, ropes, and scaffolds. The claimant can frequently reach overhead with the left upper extremity. The claimant can frequently grasp, turn, and twist with the left, non-dominant hand. The claimant must avoid unprotected heights, commercial driving, and moving machinery. The claimant can perform work that involves occasional contact with the public and coworkers.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

* * *

7. The claimant was born [in] 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. The claimant subsequently changed age category to advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

* * *

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 24, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 18-29.

Plaintiff's request for Appeals Council review was denied on November 13, 2017, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-6.

II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). ECF No. 13 at 15-22.

III. ANALYSIS

Plaintiff argues that the ALJ erred in: (1) rejecting treating physician Dr. Paul Ky's opinion concerning her physical limitations, (2) rejecting treating physician Dr. Latif Ziyar's opinion addressing her mental limitations; and (3) discounting her credibility absent clear and

convincing reasons. ECF No. 13-1 at 23-34. For the reasons discussed below, the court finds plaintiff's first argument persuasive and remands for further proceedings on that basis. Accordingly, the court declines to address plaintiff's remaining arguments.

### A.     Relevant Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

### B.     Discussion

Plaintiff's treating physician Dr. Paul Ky completed a pain assessment form stating that plaintiff has chronic and progressive lumbar and cervical conditions, which cause constant pain that increases with exacerbation. *Id.* at 879-80, 885. Dr. Ky opined that plaintiff was limited to sitting one hour in an eight-hour workday, standing and/or walking less than one hour in an eight-hour workday, never/rarely lifting or carrying more than five pounds, occasionally grasping and

fingering; and never/rarely reaching. *Id*. at 882-884. He also concluded that plaintiff needs to elevate her legs when sitting for prolonged periods of time and requires unscheduled breaks every hour. *Id*. at 883-84. He further opined that plaintiff's impairments would result in her missing three or more days of work a month. *Id*. at 885.

The ALJ gave little weight to Dr. Ky's opinion, finding that it was not supported by plaintiff's medical records. Specifically, the ALJ concluded that the opinion was inconsistent with: (1) Dr. Ky's own treatment notes showing plaintiff's symptoms improved with medication and injections; (2) treatment records from other providers reflecting plaintiff had normal range of motion in all extremities; and (3) an orthopedic evaluation of plaintiff's knees documenting only minimal symptoms. AR 25. None of these reasons provide a specific and legitimate basis for rejecting Dr. Ky's treating opinion.[2] *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record.").

The ALJ's first reason—plaintiff's purported improvement with treatment—is based on a mischaracterization of the record as a whole. Although several records show that plaintiff's pain improved shortly after receiving different forms of treatment, the Ninth Circuit has cautioned that "the treatment records must be viewed in light of the overall diagnostic record." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). When read as a whole, Dr. Ky's treatment notes reflect that plaintiff's treatment only provided temporary relief that was often short lived.

In May 2012, plaintiff first sought treatment from Dr. Ky for cervical and lumbar pain that radiated down her arms and legs. AR 742-46. Dr. Ky addressed plaintiff's pain with Hydrocodone and Baclofen (muscle relaxer), which alleviated some of the pain. *Id*. at 718-27. However, plaintiff's pain persisted and in August 2012, cervical epidural steroid injections were administered. AR 707-10. The following month, plaintiff reported that the injection had initially

---

[2] Dr. Ky's opinion was contradicted by the opinions of non-examining physicians Dr. Ernest Wong and Dr. C. Bullard. Dr. Wang opined plaintiff's physical impairments were not severe. AR 87. Dr. Bullard opined that plaintiff could perform medium work, but with certain postural limitations. *Id*. 116-18.

helped tremendously, but her pain had subsequently returned. *Id*. at 703. In October 12, 2012, plaintiff received cervical medial branch blocks, which also provided significant pain relief. *Id*. at 699-702, 698. But by early November her pain levels were the same as they had been prior to receiving the nerve blocks. AR 695, 703.

Plaintiff then underwent cervical radiofrequency ablation, which reduced her pain and narcotic medication use. *Id*. at 687-94. She also reported a reduction in pain after receiving another cervical steroid injection in January 2013. *Id*. at 673-81. However, by February 2013, plaintiff was again experiencing severe cervical pain. *Id*. at 665. More steroid injections were administered in March 2013, this time resulting in significant pain relief for three months. *Id*. at 633, 640, 646, 652. However, treatment records from July 2013 reflect an increase in cervical pain, as well as greater radicular pain running down plaintiff's arms. *Id*. at 632-33. Plaintiff received additional cervical steroid injections in July and September, which helped control plaintiff's pain through November 2013. *Id*. at 600-03, 628-31.

Plaintiff then received nerve blocks and cervical facet injections in December 2013, February 2014, and March 2014, but each provided relief for only one to two weeks. AR 542-49, 559, 566, 573, 578-81, 583, 589-92. In March and April 2014, she underwent ablation of the cervical nerves, which was noted to provide moderate pain relief. *Id*. at 538-45, 55152. The following month plaintiff received lumbar facet injections (*id*. at 534-37), but these only provided moderate relief for one week (*id*. at 524). Plaintiff's most recent progress report, dated August 19, 2014, shows that plaintiff continued to complain of cervical pain despite her previous treatment and continued use of narcotic pain medication. *Id*. at 522-59.

These records demonstrate that the while plaintiff initially benefited from treatment, that benefit was generally short lived. Accordingly, plaintiff's purported improvement with treatment was not a proper basis for rejecting Dr. Ky's opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *cf. Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("The ALJ's conclusion that Rodriguez was responding to treatment also does not provide a clear and convincing reason

for disregarding Dr. Pettinger's opinion. No physician opined that any improvement would allow Rodriguez to return to work").

The ALJ's remaining reasons for rejecting Dr. Ky's opinion was that it was inconsistent with (1) records showing plaintiff had normal range of motion in her extremities and (2) minimal findings from an orthopedic evaluation of plaintiff's knees. AR 25. Dr. Ky's opinion, however, was not predicated on an impairment to one or more of plaintiff's extremities. It was based on plaintiff's "chronic and progressive lumbar and cervical conditions." *Id*. at 885. Dr. Ky also stated that his opinion was supported by an MRI of plaintiff's spine showing herniated cervical and lumbar discs, cervical stenosis, lumbar and cervical facet arthropathy, and lumbar and cervical radiculopathy. Normal findings regarding plaintiff's extremities do not undermine Dr. Ky's opinion that plaintiff's cervical and lumbar spine conditions impose severe limitations.

Accordingly, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Ky's treating opinion.

C. Remand for Further Proceedings

"A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal quotes and citations omitted). A district court may remand for immediate payment of benefits only where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 563 (9th Cir. 2004). However, even where all three requirements are satisfied, the court retains "flexibility" in determining the appropriate remedy. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). "Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Dominguez*, 808 F.3d at 407.

/////

Here, the court cannot find that further administrative proceedings would serve no useful purpose. The court notes that there are significant gaps in plaintiff's medical records suggesting that the administrative record is incomplete. The vast majority of plaintiff's medical records were submitted in late 2014, just prior to the initial denial of her applications for benefits. *See, e.g.,* AR 352, 504, 747. On February 23, 2015, after her claims were denied on reconsideration, plaintiff timely filed a request for a hearing before an administrative law judge. *Id*. 153. Plaintiff's hearing, however, was not held until May 31, 2017, more than two years after her request. Despite the significant delay, it does not appear the ALJ attempted to obtain medical records from the two years preceding the hearing or even inquired whether such records existed.[3] This is troubling given strong indications from the record that plaintiff continued to receive treatment from her medical providers. The medical records that were submitted show plaintiff regularly sought treatment from her primary care physician, psychiatrist Latif Ziyar, and Dr. Ky, and there is no basis for concluded that she ceased all treatment at the end of 2014. *Id*. at 352-862. Indeed, the pain assessment form Dr. Ky completed in February 2016 specifically states that he sees plaintiff monthly and that plaintiff was last seen on February 1, 2016. *Id*. at 879.

Accordingly, it appears that the ALJ's decision was not based on all medical records from the relevant period. For this reason, remand for further proceedings is appropriate.

IV. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

---

[3] The record does contain four medical records dated after 2014, but these records suggest plaintiff continued to receive medical treatment. The records, which were submitted by the attorney who represented plaintiff at the administrative level, consist of: two MRI reports from March 2015; a March 2017 procedure report for a steroid injection in plaintiff's knee; and an April 2017 procedure report for cervical branch radiofrequency ablation. AR 877-78, 891-98. Presumably, plaintiff did not have MRIs completed or undergo these procedures without first being evaluated by her treating physician. But there are no medical records documenting office visits around the time of the MRIs or the medical procedures.

4. The Clerk is directed to enter judgment in plaintiff's favor and close the case.

DATED: March 27, 2019.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE